Alex R. Straus, SBN 321366
astraus@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: 310-474-9111; Fax: 310-474-8585

Greg F. Coleman*
greg@gregcolemanlaw.com
GREG COLEMAN LAW PC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865)247-0080 ; Fax: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St. Raleigh, NC 27603
Tel: 919-600-5000 ; Fax: 919-600-5035

* pro hac vice applications forthcoming

Counsel for Plaintiffs,
Emery Sugasawara

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENERY SUGASAWARA, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>   v.<br><br>FORD MOTOR COMPANY,<br><br>                  Defendant. | Case No.  5:18-cv-6159<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Violation of Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*<br>2. Violation of California False Advertising Law, California Business & Professions Code § 17200, *et seq.*<br>3. Negligence<br>4. Product Liability – Design Defect<br>5. Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br>6. Violation of Song-Beverly Consumer Warranty Act, California Civil Code § 1790, *et seq.*<br>7. Violation of Other State Statutes Prohibiting Unfair and Deceptive Acts and Practices |

Plaintiffs EMERY SUGASAWARA  ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Defendant Ford Motor Company ("Defendant" or "Ford"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this case individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased certain defective Ford F-150 vehicles that were that were designed, manufactured, distributed, marketed, sold, and leased by Defendant or Defendant's parent, subsidiary, or affiliates thereof.

2.      Defendant designed, manufactured, distributed, marketed, sold, and leased F o r d F - 1 5 0 vehicles equipped with seatbelt  pretensioners s y s t e m s ("Defective Vehicles" or "Vehicles")[1] to Plaintiff and Class Members.

3.      Defendant knew or should have known that the Defective Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Defective Vehicles' seatbelt  pretensioners s y s t e m s that can lead to fire and/or smoke and potentially death and other serious injuries (the "Seatbelt Defect").

4.      Seatbelt pretensioners are designed to reduce the slack of front seatbelts during a crash using a small pyrotechnic device to drive a piston and ignite gas that will rapidly tighten the seatbelt in order to protect the person sitting in the seat.  Due to the Seatbelt Defect, during a collision, the seatbelt pretensioners in Defendant's F-150 vehicles can create excessive sparks which can initiate a fire and cause significant property damage in addition to death and other personal injuries.  To date, there have been numerous reports of fire spreading to the insulation behind the B-pillar[2] and carpeting of the Defective Vehicles as a result of the Seatbelt Defect.

5.      Defendant has recalled nearly two million regular cab and Super Crew Ford F-150

---

[1] The Defective Vehicles are any 2015 through 2018 model year Ford F-150.

[2] B-pillar is the pillar on both sides just behind the vehicle's front seats.  B-pillars start where the driver and passenger-sis=de windows end as one looks backwards along the length of the vehicle. .

pickup trucks as a result of this defect, just weeks after the National Highway Traffic Safety Administration ("NHTSA") opened an investigation prompted by nearly two dozen reports of fire and smoke resulting from the Seatbelt Defect.

6.      Prior to purchasing or leasing the Defective Vehicles, Plaintiff and other Class Members did not know that the Defective Vehicles suffered from the seatbelt pretensioner defect and did not contemplate that the Defective Vehicles could potentially catch fire as a result of the Seatbelt Defect during a collision.

7.      Plaintiff is informed and believes and based thereon alleges that Defendant knew or should have known that the Defective Vehicles are defective and suffer from the Seatbelt Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendants failed to disclose this defect to Plaintiff and the Class Members at the time of purchase or lease and thereafter.

8.      Had Plaintiff and the Class Members known about this defect at the time of sale or lease, as well as the associated costs related to the Seatbelt Defect, Plaintiff and the Class Members would not have purchased the Defective Vehicles or would have paid less for them.

9.      As a result of their reliance on Defendants' omissions and/or misrepresentation, owners and/or lessees of the Defective Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Defective Vehicles.

10.      The first priority of an auto manufacturer should be to ensure that its vehicles are safe, and particularly that its vehicles have seatbelts and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its critical safety systems (such as seatbelts) work properly. Moreover, an auto manufacturer that is aware of dangerous design defects that cause its vehicles to catch fire must promptly disclose and remedy such defects.

11.      This case arises from Defendant's breach of its obligations and duties, including Defendant's failure to disclose that, as a result of the Seatbelt Defect, nearly two million Ford vehicles may have the propensity to catch fire during or after a collision, creating an unreasonable

risk of serious bodily harm and death.

12.     Plaintiffs' investigation, including a review of what is known regarding NHTSA's investigation, suggests that Defendant's recall does not capture all of the defective vehicles which suffer from the same or substantially similar Seatbelt Defect.

13.     To the extent warranted by the developing facts, Plaintiffs will further supplement the list of Defective Vehicles to include additional Ford vehicles that have the Seatbelt Defect.

14.     The Seatbelt Defect make the Defective Vehicles unreasonably dangerous.  Because of the defects, the Defective Vehicles are likely to catch fire if accidents occur and there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants and others in the vicinity.

15.     The Seatbelt Defect present a significant and unreasonable safety risk exposing Defective Vehicle owners, their passengers and others in the vicinity to a risk of serious injury or death.

16.     Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect.   49 U.S.C. §§ 30118(c)(1) & (2).  If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.  49 U.S.C. §§ 30118(b)(2)(A) & (B).  Upon information and belief, Defendant also violated the TREAD Act by failing to timely inform NHTSA of the Seatbelt Defect and allowed cars to remain on the road with these defects.  These same acts and omissions also violated various state consumer protection laws as detailed below.

17.     Plaintiffs and the Class have been damaged by Defendant's misrepresentations, concealment, and non-disclosure of the Seatbelt Defect in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of Defendant's failure to timely disclose the serious defect.

18.     Plaintiffs and the Class either paid more for the Defective Vehicles than they would have had they known of the Seatbelt Defect, or they would not have purchased the Defective

Vehicles at all had they known of the defects.

19.     Plaintiffs bring claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), negligence, product liability (design defect), violations of the Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.* ("MMWA"), violations of the Song-Beverly Consumer Warranty Act, California Civil Code § 1790, *et seq.* ("Song-Beverly Act"), and violations of other state statutes prohibiting unfair and deceptive acts and practices.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

21.     The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in California, generally, and this District, specifically.  Defendant has marketed, promoted, distributed, and sold the Defective Vehicles in California.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as the Defect in Plaintiffs' vehicle manifested itself within this District.

23.     To the extent there is any contractual or other impediment to pursuit of these claims on a class action basis, Plaintiffs specifically allege, and will prove, if necessary, that any bar to class action proceedings is unconscionable, unfair and against public policy.

## PARTIES

24.     Plaintiff Emery Sugasawara is a California citizen who lives in Gilroy, California.  Mr. Andrews purchased a 2016 Ford F-150 Super Crew Cab.  This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Ford Motor Company.

25.     Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware with The Corporation Trust Company, Corporation Trust Center, 1209

Orange Street, Wilmington, Delaware 19801 as its registered agent. Ford's principal place of business is at One American Road, Dearborn, Michigan 48126.

## THE SEATBELT DEFECT IN THE DEFECTIVE VEHICLES

26.     According to the National Safety Council, people living in the United States have a 1-in-84 lifetime risk of dying in a car accident.  However, the Centers for Disease Control reports that automobile accident fatality rates are reduced by 50% when the occupants are wearing their seatbelt. Seatbelts have been mandated by federal law in all passenger vehicles (except buses) since 1968. *See* 49 U.S. Code § 30127.  Beginning in 1983, all drivers and passengers in the front seats, regardless of age, were required to wear seatbelts and, in 1989, wearing rear seat belts became compulsory for children under 14. In 1991, it became compulsory for adults to wear seat belts in the back of a car.

27.     Given the importance of and requirement that all passenger vehicles be equipped with seatbelts, it is imperative that an auto manufacturer ensures its seatbelts do not add additional dangers to drivers, passengers, and others in the vicinity of their vehicles. With respect to the Defective Vehicles, Defendant has failed to do so.

28.     Seatbelt pretensioners are a component of the seatbelt system which locks the seatbelt in place during a crash. There are three types of seatbelt pretensioner: mechanical, electrical, and pyrotechnic. A mechanical pretensioner consists of an inertial wheel combined with a pendulum which moves to lock the belt into place during sudden deceleration. An electric pretensioner replaces the pendulum with an electrical sensor. This prevents the false locking condition that is commonly observed with a mechanical pretensioner. The electrical sensor can also be interconnected with other systems on the vehicle, such as rollover sensors or airbag sensors. This connectivity ensures that the seatbelts will lock even if the sudden deceleration that is needed to lock a mechanical pretensioner does not occur.

29.     A pyrotechnic pretensioner is the most complex type of pretension device. An electronically triggered pyrotechnic device not only locks the seatbelt in place but tightens the belt to take up any slack that may be present, minimizing the movement of the occupant within the vehicle during a crash situation. Once a pyrotechnical pretensioner is activated it must be replaced. A pyrotechnic pretensioner mechanism uses an explosive charge to drive a concealed piston when

sensors detect the signature abrupt deceleration of an accident. The piston, in turn, rapidly drives the spool around which the fabric strap of a seatbelt is wrapped. The rapid retraction of the belt fabric removes the slack from the belt.

30.     The Defective Vehicles were manufactured with pyrotechnic pretensioners. The pyrotechnic pretensioners in the Defective Vehicles were found to be defective resulting in the creation of excessive sparks after a collision, initiating fires inside the vehicle which spread to the insulation and carpeting of the Defective Vehicles.

31.     The Defective Vehicles are, therefore, unreasonably dangerous and those dangers are unreasonably likely to result in serious bodily harm or death to the drivers and passengers of the Defective Vehicles, as well as to other vehicle operators and pedestrians.

## THE SEATBELT DEFECT HAS HARMED PLAINTIFFS AND THE CLASS

32.     The Seatbelt Defect has caused damage to Plaintiffs and the Class.

33.     A vehicle purchased, leased, or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect.

34.     A vehicle purchased, leased, or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the Seatbelt Defect.

35.     Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the Seatbelt Defect been disclosed. Plaintiffs and the Class overpaid for their Defective Vehicles.  Because of the concealed Seatbelt Defect, Plaintiffs did not receive the benefit of the bargain.

36.     Class members who purchased new or used Defective Vehicles overpaid for their Defective Vehicles as a direct result of Defendant's ongoing violations of the TREAD Act and state consumer protection laws by failing to disclose the existence of the Seatbelt Defect.

37.     Plaintiffs and the Class are stuck with unsafe vehicles that are now worth less than they would have been but for the Defendant's failure to disclose and remedy the Seatbelt Defect.

38.     If Defendant had timely disclosed the Seatbelt Defect as required by the MCPA, the TREAD Act, and the State consumer protection laws set forth below, all Class members' vehicles would now be worth more.

## TOLLING OF THE STATUTES OF LIMITATION

39.     All applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein.  Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that Defendant had information in their possession about the existence and dangerousness of the defect and opted to conceal that information until shortly before this class action was filed.

40.     Defendant was, and Defendant remains, under a continuing duty to disclose to NHTSA, Plaintiffs, and the Class the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

41.     Because of the active concealment by Defendant, any and all limitations periods otherwise applicable to Plaintiffs' claims have been tolled and Defendant is estopped from relying on any statutes of limitation in their defense of this action.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a class initially defined as follows:

> All persons in the United States who formerly or currently own or lease
> one or more of the Defective Vehicles.

43.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Product for the purpose of resale.

44.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

45.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believes that many millions of consumers have purchased or leased the Defective Vehicles.

46.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.     Whether the Defective Vehicles suffer from the Seatbelt Defect;

b.     Whether Defendant violated the CLRA, California Civil Code § 1750, *et seq.*;

c.     Whether Defendant violated the UCL, California Business and Professions Code § 17200, *et seq.*;

d.     Whether Defendant was negligent;

e.     Whether Defendant fraudulently concealed the Seatbelt Defect;

f.     Whether Defendant is liable for a design defect;

g.     Whether Defendant violated the MMWA, 15 U.S.,C. § 2301, *et seq.*;

h.     Whether Defendant violated the Song-Beverly Act, California Civil Code § 1790, *et seq.*;

i.     Whether Defendant the MCPA, Mich. Comp. L. Ann. § 445.901, *et seq.*;

j.     Whether Defendant violated the other state statutes prohibiting unfair and deceptive acts and practices; and

k.     The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

47.     Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

48.     <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs' Counsel are competent and experienced in litigating class actions.

49.     <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

50.     <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendant's misrepresentations are uniform as to all members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation of Consumer Legal Remedies Act – Civil Code § 1750, *et seq.*)

51.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

52.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

53.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

54.     Plaintiffs and each member of the Class are consumers as defined by California Civil Code §1761(d).  Defendant intended to sell the Products.

55.     The Defective Vehicles are goods within the meaning of Civil Code §1761(a).

56.     Defendant violated the CLRA in at least the following respects:

   a.     in violation of  §1770(a)(5), Defendant represented that the Defective Vehicles have approval, characteristics, and uses or benefits which they do not have

1    (because they are defective);

2       b.    in violation of §1770(a)(7), Defendant represented that the Defective Vehicles

3             are of a particular standard, quality or grade, when they are of another (having a

4             design defect);

5       c.    in violation of Section 1770(a)(9), Defendant has advertised the Defective

6             Vehicles as safe with the intent not to sell them as advertised (with Seatbelt

7             Defect); and

8       d.    in violation of §1770(a)(16), Defendant represented that the Products have been

9             supplied in accordance with previous representations (being free of design

10            defects), when they were not.

11   57.    Defendant violated the Act by representing the Defective Vehicles were safe and free of

12   defects when they were not.  Defendant knew, or should have known, that the representations and

13   advertisements were false and misleading.

14   58.    Defendant's acts and omissions constitute unfair, deceptive, and misleading business

15   practices in violation of Civil Code §1770(a).

16   59.    If Defendant fails to rectify or agree to rectify the problems associated with the actions

17   detailed above and give notice to all affected consumers within 30 days of receipt of Plaintiffs' written

18   notice pursuant to §1782 of the California Act, Plaintiffs will amend this Complaint to add claims for

19   actual, punitive, and statutory damages pursuant to the CLRA.  Plaintiffs and the Class also will seek a

20   Court order enjoining the above-described wrongful acts and practices of Defendant and for

21   restitution, disgorgement, statutory damages, and any other relief that the Court deems proper.

22   60.    Defendant's conduct is malicious, fraudulent, and wanton in that Defendant

23   intentionally and knowingly provided misleading information to the public.

24                              **SECOND CAUSE OF ACTION**

25        **(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

26   61.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

27

28

62.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

63.     Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*

64.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (as set forth in the first cause of action), and the Transportation Recall Enhancement, Accountability and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30101, *et seq.* (by failing to timely inform the NHTSA of the Seatbelt Defect and allowing the Defective Vehicles to be sold with the Seatbelt Defect).

65.     Defendant's conduct also is unlawful in that it violates the California Secret Warranty Law, California Civil Code § 1795.90 *et seq.*, by:

   a.  Failing to timely notify all affected vehicle owners that the Seatbelt Defect were part of an adjustment program and that they could have had their dangerous propensities of the seatbelts repaired free of charge;

   b.  Failing to reimburse vehicle owners who paid to have their seatbelts repaired or replaced;

   c.  Replacing or repairing defective seatbelts for some customers but failing to notify all other customers of that benefit; and/or

   d.  Failing to comply with the applicable notification provisions in the Secret Warranty Law.

66.     Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and Class members.  The harm to Plaintiff and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the TREAD ACT as alleged herein.

67.     Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiffs relied on Defendant's representations and omissions.

68.     As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money because they purchased the Defective Vehicle and paid the price they paid believing it to be free of defects when it was not.

69.     Plaintiffs, on behalf of themselves and Class members, seek equitable relief in the form of an order requiring Defendant to refund Plaintiffs and all Class members all monies they paid for repairing and/or replacing the Defective Vehicles, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective recall campaign.

## THIRD CAUSE OF ACTION

### (Negligence)

70.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

71.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

72.     Defendant had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe for their intended uses.  Defendant had a duty to adequately test its vehicles' safety before selling millions to consumers worldwide.

73.     Defendant had a duty to test vehicles for seatbelt pretensioner problems once Defendant was on notice that its vehicles had a propensity to have excessive spark issues leading to post-collision internal fires, which can cause bodily injury, death, and property damage.  Moreover, Defendant had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its products.

74.     At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

75.     Defendant was negligent, and breached the above duties owed to Plaintiffs and Class members.

76.     As direct and proximate causes of Defendant's breaches, Plaintiffs and the Class have been damaged including, but not limited to, the cost of repairs required due to seatbelt pretension problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

**FOURTH CAUSE OF ACTION**

**(Product Liability – Design Defect)**

77.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

78.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

79.     Defendant designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the Defective Vehicles and their component parts and constituents, which was intended by Defendant to be used as passenger vehicles and for other related activities.

80.     Defendant knew that the Defective Vehicles were to be purchased and used without inspection for defects by Plaintiffs and Class members.

81.     The Defective Vehicles were unsafe for their intended uses by reason of defects in their manufacture, design, testing, components, and constituents, so that they would not safely serve their purpose, but would instead expose the users of the vehicles to possible serious injuries.

82.     Defendant designed the Defective Vehicles defectively, causing them to fail to perform as safely as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.

83.     The risks inherent in the design of the Defective Vehicles significantly outweigh any benefits of the design.

84.     Plaintiffs and Class members were not aware of the Defect at any time prior to the recent revelations regarding problems with the Defective Vehicles.

85.     As direct and proximate causes of the Seatbelt Defect, Plaintiffs and the Class have

been damaged including, but not limited to, the cost of repairs required due to the Seatbelt Defect, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

### FIFTH CAUSE OF ACTION

### (Violation of Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.*)

86.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

87.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

88.     Plaintiffs and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

89.     Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

90.     The Defective Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

91.     Defendant affirmed the fact, promise, and/or described in writing that the seatbelt pretensioners would meet a specified level of performance over a specified period of time, namely, that it would not require maintenance and last for the life of the Defective Vehicles or until its first activation, whichever was sooner.  Defendant's written affirmations of fact, promises, or descriptions related to the nature of the seatbelt pretensioners in the Defective Vehicles and became part of the basis of the bargain between Plaintiffs and Defendant.  Defendant refuses to recognize or honor the written seatbelt warranties and, indeed, denies the existence of these warranties.  Defendant breached its written warranties when the Defective Vehicles did not perform as represented by Defendant and thereafter when Defendant refused to recognize or honor the warranties.  Defendant's conduct thereby caused damages to Plaintiffs and Class members.

92.     The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

93.     Resorting to any informal dispute resolution procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiffs is unnecessary and/or futile. At the time of sale to Plaintiffs, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations or omissions concerning the Seatbelt Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiffs.  Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances.  Accordingly, any requirement under the MMWA or otherwise that Plaintiffs resort to any informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties is excused and, thereby, deemed satisfied.

94.     As a direct and proximate result of Defendant's breach of written warranties, Plaintiffs and Class members sustained damages and other losses.  Defendant's conduct caused Plaintiffs' and Class members' damages and, accordingly, Plaintiffs and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

**SIXTH CAUSE OF ACTION**

**(Violation of Song-Beverly Consumer Warranty Act, California Civil Code § 1790, *et seq.*)**

95.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

96.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of California residents who formerly or currently own or lease one or more of the Defective Vehicles.

97.     Plaintiffs and Class members who purchased the Defective Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

98.     The Defective Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a)

99.     Defendant is a "manufacturer" of the Defective Vehicles within the meaning of Cal. Civ. Code § 1791(j).

100.     Defendant impliedly warranted to Plaintiffs and the Class that its Defective Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the

Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

101.     Cal. Civ. Code § 1791.1(a) states that "implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

102.     The Defective Vehicles would not pass without objection in the automotive trade because of the Seatbelt Defect that cause the Defective Vehicles to experience post-collision internal fires lead to an unreasonable likelihood of serious bodily harm or death to vehicle occupants.

103.     Because of the Seatbelt Defect, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

104.     The Defective Vehicles are not adequately labeled because the labeling fails to disclose the Seatbelt Defect and its dangerous safety implications.

105.     Defendant breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the Seatbelt Defect.

106.     The Seatbelt Defect have deprived Plaintiffs and the Class of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

107.     As a direct and proximate result of Defendant's breach of its duties, Class members received goods whose dangerous condition substantially impairs their value to Class members. Defendant's conduct has damaged Plaintiffs and the Class through the diminished value, the malfunctioning, and the nonuse of their Defective Vehicles.

108.     Under Cal. Civ. Code §§ 1791.1(d) & 1794, Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

109.     Under Cal. Civ. Code § 1794, Class members are entitled to costs and attorneys' fees.

CLASS ACTION COMPLAINT

**SEVENTH CAUSE OF ACTION**

**(Violations of the Other State Statutes Prohibiting Unfair and Deceptive Acts and Practices)**

110.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

111.     Plaintiffs bring this claim individually and on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of subclasses of the other states' residents who formerly or currently own or lease one or more of the Defective Vehicles.

112.     The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

113.     Defendant's actions violate the Deceptive Trade Practices Acts of the various states, as set out more fully above, by failing to disclose and by actively concealing the Seatbelt Defect.

114.     The conduct described in the statement of facts constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices.  The deceptive trade practices acts violated by Defendants are set forth in the next paragraph.

115.     The violations of the various state consumer protection acts (Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.); Arkansas: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 et seq.); Colorado: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.);  Washington, D.C. the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-390 et seq.); and the False Advertising Statute (Ga. Code Ann. §10-1-420 et

seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.); Illinois: the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas:  the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 et seq.); Maryland: the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Minnesota: the Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq.) and the False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.);  Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 et seq.); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.);  New Hampshire: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 et seq.); New Jersey: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West)); New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practice Statutes

(N.D. Gen. Stat. §51-15-01 et. seq.); Ohio:  Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq. (Vernon)); Utah:  Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 et seq.) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 et seq.); Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.); West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.); Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.)) have directly, foreseeably, and proximately caused damages to Plaintiffs and proposed class in amounts yet to be determined.

116.    As a result of Defendant's violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiffs and Class members have suffered actual damages for which Defendant is liable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class

Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

D.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

CLASS ACTION COMPLAINT

1    Dated:  October 7, 2018                    Respectfully submitted,

2

3                                               **AHDOOT & WOLFSON, PC**

4

5                                               Alex R. Straus
                                                Tina Wolfson
6                                               Robert Ahdoot
                                                10728 Lindbrook Drive
7                                               Los Angeles, California 90024
                                                Tel: 310-474-9111
8                                               Fax: 310-474-8585
                                                Email: rahdoot@ahdootwolfson.com
9                                               twolfson@ahdootwolfson.com
                                                tmaya@ahdootwolfson.com
10                                              bking@ahdootwolfson.com
                                                astraus@ahdootwolfson.com
11

12                                              Greg F. Coleman*
13                                              greg@gregcolemanlaw.com
                                                GREG COLEMAN LAW PC
14                                              First Tennessee Plaza
                                                800 S. Gay Street, Suite 1100
15                                              Knoxville, TN 37929
                                                Tel: (865)247-0080
16                                              Fax: (865) 522-0049

17

18                                              Daniel K. Bryson*
                                                Dan@wbmllp.com
19                                              J. Hunter Bryson*
                                                Hunter@wbmllp.com
20                                              WHITFIELD BRYSON & MASON LLP
                                                900 W. Morgan St. Raleigh, NC 27603
21                                              Tel: 919-600-5000
                                                Fax: 919-600-5035
22

23                                              * pro hac vice applications forthcoming

24                                              Counsel for Plaintiffs,
                                                EMERY SUGASAWARA
25

26

27

28

CLASS ACTION COMPLAINT

**AFFIDAVIT OF ALEX R. STRAUS**

I, Alex R. Straus, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs Emery Sugasawara in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Based on my research and personal knowledge, Defendant Ford Motor Company does business within the County of Santa Clara and Plaintiffs' automotive defect manifested itself within the County of Santa Claras, as alleged in this Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this October 7, 2018 in Westwood, California that the foregoing is true and correct.

_____
Alex R. Straus