UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMERY SUGASAWARA and VINCENT TUMBARELLO,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 18-CV-06159-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 68 |

This is a putative class action arising out of an alleged defect with the seatbelt systems in certain Ford F-150 trucks. ECF No. 64. The putative class (collectively, "Plaintiffs") consists of consumers who have owned or leased the vehicles at issue. Plaintiffs bring a variety of claims under state and federal law against Defendant Ford Motor Company ("Ford"), all of which Ford now seeks to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6). ECF No. 68 ("Mot. to Dismiss"). After careful review of the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Ford's motion to dismiss.

I.     **BACKGROUND**

    **A. Factual Background**

Defendant Ford is the designer, manufacturer, marketer and seller of the Ford F-150. ECF No. 64 ("SAC") ¶ 2. Plaintiffs Emery Sugasawara and Vincent Tumbarello seek to represent a class of nationwide consumers who "formerly or currently own or lease" Ford F-150 trucks, model years 2015 through 2018 (collectively, "Vehicles"). *Id.* ¶¶ 27-28, 68. As described in greater detail below, Plaintiffs allege that these trucks are equipped with defective seatbelt pretensioners, which are the subject of a recall.

The following facts are drawn primarily from the Second Amended Complaint ("SAC"), which the Court must treat as true at the pleading stage. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Certain details, to the extent they are not contested by the parties, are drawn from various documents from the National Highway Traffic Safety Administration ("NHTSA"), of which the Court takes judicial notice in deciding the instant motions.[1] *See Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("[A] court may take judicial notice of records and reports of administrative bodies."); *Deras v. Volkswagen Group of America, Inc.*, No. 17-cv-05452, 2018 WL 2267448 *5 n.6 (N.D. Cal. May 17, 2018) (granting Volkswagen's "unopposed request to take judicial notice of a report by the NHTSA concerning VW's recall of 2013-15 Beetles with a factory-installed panoramic sunroof").

### 1. The Defect

Seatbelts are a ubiquitous and essential safety feature of cars in the United States. One of the principal ways that seatbelts protect drivers and passengers during collisions is by minimizing the movement of their bodies. The seatbelt pretensioner is the key component of the seatbelt system that accomplishes this task: it tightens the belt to minimize slack and then locks the belt in place. SAC ¶ 32. Older cars used a mechanical pretensioner. *Id.* Anyone who has pulled out a seatbelt too quickly in one of these cars and found it unwilling to extend has experienced the false locking phenomenon common with mechanical pretensioners. *See id.* The Ford F-150s at issue in

---

[1] Ford also asks the Court to take judicial notice of the 2016 model year Ford warranty guide available on its website. ECF No. 59 at 1; *see* ECF No. 58. The Court denies this request as moot, as the document is not necessary to resolve the instant motion in Ford's favor.

2

this case are equipped with a more advanced, pyrotechnic pretensioner. *Id.* ¶ 34. A pyrotechnic pretensioner is equipped with an electronic sensor that detects accidents. *Id.* ¶ 33. The sensor triggers a pyrotechnic device that uses an explosive charge to rapidly retract the belt, thereby removing any slack. *Id.* These pretensioners are single-use: once activated, the pretensioner must be replaced. *Id.*

Due to a defect in the Vehicles, the pyrotechnic device in the pretensioner sometimes generates an unusually high level of sparking, which can ignite the flammable gas exhausted from the pretensioner. *Id.* ¶ 4; ECF No. 58-1 ("Ford Recall Acknowledgment Letter") at 2. Flammable materials located near the pretensioner—such as insulation and carpet—may then catch fire. SAC ¶ 4; Ford Recall Acknowledgment Letter at 2. The Court refers to this problem as "the Defect." The area of the car where the fires generally occur is known as the "B-pillar" area. SAC ¶¶ 49, 51-56. The B-pillar is the part of the truck body just behind the vehicle's front seats, from the roof to the floor. *Id.* at 2 n.2. The B-pillar not only provides structural support for the truck, but it also houses the seatbelt pretensioners for the front seats. ECF No. 58-5 ("NHTSA Chronology") at 2.

**2. The Investigation and Recall**

At some point before April 2017, Ford received four reports of post-crash fires in the B-pillar area of 2015 and 2016 model year Ford 150s. NHTSA Chronology at 2; SAC ¶ 49. In response, Ford's Critical Concern Review Group (CCRG) conducted an internal investigation from April to October 2017. NHTSA Chronology at 2; SAC ¶ 49. As part of the investigation, Ford reviewed its internal product development testing and inspected all four subject vehicles. NHTSA Chronology at 2. Ford found no anomalies and was unable to re-create the fire. *Id.*

On November 17, 2017, Ford received another report of a post-crash fire from Transport Canada (the department of the Canadian Government responsible for transportation policies and programs). *Id.* Ford and Transport Canada conducted a joint inspection of the vehicle on December 14, 2017; the inspection again failed to identify the cause of the fire. *Id.*

Eleven more reports followed between January 2018 and June 2018, this time including 2017 and 2018 model year vehicles. *Id.* Notably, the pretensioners in the 2018 Ford-150 are from

3

a different supplier than the ones used in model years 2015 to 2017. *Id.*; *see also* ECF No. 58-2 ("Part 573 Report") at 2. NHTSA separately received three additional reports and notified Ford. NHTSA Chronology at 2; SAC ¶ 55. As of August 24, 2018, Ford was aware of 17 reports related to the Defect in the United States. Part 573 Report at 2.

During this time, Ford continued to analyze the vehicles involved in these reports, including a joint inspection with NHTSA on June 28, 2018. NHTSA Chronology at 2. Ford also conducted testing of component parts and fully built vehicles. *Id.*

On September 5, 2018, Ford notified NHTSA that it intended to conduct a voluntary safety recall of Ford F-150 Regular Cab and SuperCrew Cab vehicles for model years 2015 to 2018. *See* SAC ¶ 56; Ford Recall Acknowledgment Letter at 2. In its recall acknowledgement letter to NHTSA, Ford described the defect: "If a front seat belt pretensioner deploys as the result of a crash, the sparks may ignite materials such as carpeting or insulation within the B-pillar area." Ford Recall Acknowledgment Letter at 2. The consequence, according to Ford, was that "a vehicle fire could result if materials ignite within the vehicles." *Id.* Ford stated that it intended to notify dealers of the recall on September 5, 2018 and begin notifying owners by mail on September 24, 2018. *See* Ford Recall Acknowledgment Letter at 2; Part 573 Report at 3. Ford will be required to submit quarterly status reports to NHTSA for "six consecutive quarters beginning with the quarter in which the campaign was initiated." 49 C.F.R. § 573.7(a). Plaintiffs have not alleged that Ford has failed to comply with this or any of its other obligations to NHTSA in connection with the recall.

Through the recall, Ford is offering the following remedy free of charge to owners of affected vehicles:

> Owners will be notified by mail and instructed to take their vehicle to a Ford or Lincoln dealer to have insulation material removed from the B-pillar trim, modify the back interior panel (Regular Cab only), remove remnants of wiring harness tape in the B-pillar area, and apply heat resistant tape to the carpet and its insulation. There will be no charge for this service.

Part 573 Report at 3; *see* SAC ¶ 8 ("Defendant is offering to merely remove some of the

4

Case No. 18-CV-06159-LHK
ORDER GRANTING MOTION TO DISMISS

flammable materials from some of the areas which have caught fire and tape over other areas."). Plaintiffs emphasize that Ford is not offering to replace the pretensioners. Plaintiffs allege that the pretensioners will "continue to produce excessive sparks capable of igniting with flammable gas exhausted from the defective pretensioners which remain installed in their defective state in all Vehicles." SAC ¶ 8. For that reason, Plaintiffs believe the "proposed cure is insufficient." *Id.*

### 3. Plaintiffs' History with the Ford F-150

In November 2016, Emery Sugasawara purchased a new 2016 Ford F-150 Super Crew Cab truck from The Ford Store in Morgan Hill, California. SAC ¶ 36. He says Ford did not inform him of the seatbelt defect prior to his purchase and, if it had, he would not have purchased the car "or else would have paid significantly less" for it. *Id.* ¶¶ 37, 41. Around June 2018, Sugasawara's wife apparently learned of the recall through the internet, though it is not clear exactly how. *Id.* ¶ 38. Then, in September 2018, Sugasawara received notice in the mail of the recall, which prompted him to take the truck back to The Ford Store for repair, per the notice. *Id.* Sugasawara does not allege he has experienced the defect either before or after the repair. Nevertheless, he says that "he remains concerned that the defect was inadequately addressed and continues to pose a serious safety hazard." *Id.* at 41.

In November 2017, Vincent Tumbarello purchased a new 2017 Ford F-150 Super Crew Cab truck from Andy Mohr Ford in Plainville, Indiana. *Id.* at 43. He too says Ford did not inform him of the seatbelt defect prior to his purchase, and he would not have purchased the car "or else would have paid significantly less" for it if he had known about the defect. *Id.* at 45-46. The SAC does not state whether he received the recall notice or availed himself of the repair offered by Ford. The SAC simply states that Tumbarello "remains concerned that the defect poses a serious safety hazard" and "has lost faith in the product." *Id.* at 47. Like Sugasawara, Tumbarello does not claim that the defect has ever manifested in his truck.

### B. Procedural History

Plaintiffs filed their original complaint in October 2018. ECF No. 1. They have amended their complaint twice; the current Second Amended Complaint was filed in March 2019. ECF No.

5

Case No. 18-CV-06159-LHK
ORDER GRANTING MOTION TO DISMISS

64. Sugasawara and Tumbarello are the named plaintiffs, who seek to represent a putative class of "all persons in the United States who formerly or currently own or lease one or more" of the Vehicles. SAC ¶ 68. The suit comprises: (1) a claim under the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, *id.* ¶ 77-86; (2) a claim under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, *id.* ¶¶ 87-95; (3) a negligence claim, *id.* ¶¶ 96-102; (4) a design defect claim, *id.* ¶¶ 103-111; (5) a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, *id.* ¶¶ 112-120; (6) a claim under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.*, *id.* ¶¶ 121-135; and (7) a cluster of claims for violations of over 50 "Deceptive Trade Practices Acts of the various states," *id.* ¶¶ 136-142.

Ford filed a motion to dismiss the original Complaint and a corresponding request for judicial notice in March 2019. ECF Nos. 57, 59. That motion was mooted by the Plaintiffs' subsequent amendments to the Complaint, so Ford filed the instant motion to dismiss the SAC in June 2019. ECF No. 68. Ford's first argument for dismissal is that, pursuant to Rule 12(b)(2), the Court lacks personal jurisdiction over Tumbarello's claims against Ford. Ford also challenges both Sugasawara and Tumbarello's Article III standing to bring any of their claims and requests dismissal pursuant to Rule 12(b)(1). Finally, pursuant to Rule 12(b)(6), Ford contends the Plaintiffs have failed to adequately plead the necessary elements of the causes of action. Plaintiffs filed their opposition on July 15, 2019, ECF No. 69, and Ford filed its reply on August 1, 2019, ECF NO. 70. The motion is now ripe for the Court's review.

## II. LEGAL STANDARDS

In the instant motion, Defendant raises three grounds for dismissing all or some of the counts in the SAC: lack of subject matter jurisdiction, under Rule 12(b)(1); lack of personal jurisdiction, under Rule 12(b)(2); and failure to state a claim, under Rule 12(b)(6). However, because the Court resolves the case by addressing only the first issue, the Court need not reach the other two.

**A. Motion to Dismiss Pursuant to Rule 12(b)(1)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the

6

Case No. 18-CV-06159-LHK
ORDER GRANTING MOTION TO DISMISS

court has subject matter jurisdiction. While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya*, 658 F.3d at 1067. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such an attack, unlike with a motion to dismiss under Rule (12)b(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Relevant here, a plaintiff must demonstrate that she has a "case" or "controversy" within the meaning of Article III in order to invoke the jurisdiction of federal courts. This requirement, known as standing, requires a plaintiff to establish three elements: (1) an "injury in fact," (2) a causal connection between the injury and the defendant's challenged conduct; and (3) a likelihood that the injury will likely be redressed by a favorable decision. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). In a putative class action, at least one named plaintiff must have standing. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other

7

member of the class.") (citation omitted).

B. **Leave to Amend**

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Federal Rule of Civil Procedure Rule 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Ford seeks to dismiss all the causes of action in the Second Amended Complaint on several, often overlapping grounds. As it must address jurisdictional concerns first, the Court begins with the Ford's contention that the Plaintiffs lack standing. *See Maya*, 658 F.3d at 1068 ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). As explained below, the Court concludes that Sugasawara and Tumbarello have failed to allege plausibly a concrete, imminent injury that is traceable to Ford's conduct. The Court therefore dismisses Plaintiffs' claims for lack of subject matter jurisdiction. Consequently, the Court does not reach Defendant's arguments that the Court lacks personal jurisdiction over Tumbarello's claims against Ford or that Plaintiffs have failed to state a claim pursuant to Rule 12(b)(6).

At issue in this motion are the first and second elements of Article III standing, injury in fact and causation. As Ford points out, neither Sugasawara nor Tumbarello allege that the Defect manifested in his vehicle, let alone that he experienced any harm attributable to the Defect. Instead, Plaintiffs propound three basic categories of harm: (1) the cost of repairing the Defect; (2)

8

Case No. 18-CV-06159-LHK
ORDER GRANTING MOTION TO DISMISS

the risk of future injury from the Defect; (3) economic loss from overpaying for their Ford 150s at the time of purchase. The Court addresses the first two—which are only briefly alleged in the SAC—before focusing on Plaintiffs' main theory of harm, overpayment.

### A. Cost of repairs

The Court easily rejects Plaintiffs' first alleged injury, which is that Plaintiffs have been damaged by "the cost of repairs required due to seatbelt pretension problems." SAC ¶¶ 102, 111. The SAC is devoid of any allegations that Sugasawara or Tumbarello paid out of pocket to repair or place parts of their Ford F-150s. Even if they had, they may have been eligible for a reimbursement from Ford. *See* ECF No. 58-3 ("Owner Notification Letter") at 3; *see also* 49 U.S.C. § 30120(d) ("A manufacturer's remedy program shall include a plan for reimbursing an owner or purchaser who incurred the cost of the remedy within a reasonable time in advance of the manufacturer's notification."). Moreover, Ford's recall remedy is free of charge to owners of affected vehicles. This theory of harm fails.

### B. Risk of future injury

Next, Plaintiffs claim they are "being subjected to potential risk of injury." SAC ¶¶ 102, 111. That is, they believe "the recall remedy proposed by Ford is insufficient," and that the Defect thus continues to pose a safety hazard. ECF No. 69 ("Opposition") at 5. To qualify as an injury in fact, an alleged harm must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Laidlaw*, 528 U.S. at 180. That is not to say that the threat of future injury cannot establish standing, it can. *See, e.g.*, *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013). Specifically, the Ninth Circuit has said that "an injury is 'actual or imminent' where there is a 'credible threat' that a probabilistic harm will materialize." *Id.*

In this case, however, Plaintiffs have not alleged a credible threat of harm. Plaintiffs acknowledge that, through the recall process, Ford has voluntarily provided a remedy free of charge. Plaintiffs have not plausibly alleged that Ford's recall remedy will fail to cure the Defect. It is true that Ford has not offered to replace the seatbelt pretensioners. Instead, Ford has instructed dealers to remove specified flammable materials from the B-pillar area and to add flame

9

retardant materials. As Ford explains, this repair "break[s] the causal chain that has to occur for there to be the potential for smoke or fire." Mot. to Dismiss at 3. That the seatbelt pretensioner may continue to spark is of no moment if those sparks cannot cause harm. Plaintiffs' allegation that Ford's proffered remedy is ineffectual is conclusory and speculative. *See Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015); ("[T]he plaintiffs' assertion that the ORC Module repair may not be effective" evidences "a hypothetical possibility" rather than "an actual or imminent injury."); *In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-1814(JBS), 2001 WL 1266317, at *5 (D.N.J. Sept. 30, 1997) ("Nowhere in the complaint do plaintiffs describe what injury Subclass B members have sustained that might require further compensation beyond the offer to install a replacement ignition switch free of charge.").

Moreover, by instigating a voluntary recall, Ford "set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012); *see* 49 U.S.C. §§ 30118(c), 30120(a). In particular, Ford "has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA." *Id.* (citing 49 U.S.C. §§ 30120(c)–(e), 30165(a); 49 C.F.R. § 1.50(a)). Plaintiffs have not demonstrated "a cognizable danger that the statutory recall process will fail." *Id.* at 1214.

Finally, the Court notes that the Complaint does not state whether Tumbarello has availed himself of the recall remedy. To the extent Tumbarello has not done so, he cannot thereby manufacture standing. Any defect that persists in Tumbarello's truck is not fairly "traceable" to Ford but rather to Tumbarello; causation would therefore be lacking. *Cf. McConnell v. FEC*, 540 U.S. 93, 226-28 (2003) (holding plaintiffs' decision "not to solicit or accept large contributions" was "their personal choice" and therefore not "fairly traceable" to the Bipartisan Campaign Reform Act of 2002).

The Court therefore holds the theoretical risk of future injury from the Defect provides no basis for standing.

**C. Overpayment**

10

Case No. 18-CV-06159-LHK
ORDER GRANTING MOTION TO DISMISS

The Court now addresses Plaintiffs' main theory of injury: that because "a vehicle purchased, leased, or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect," Plaintiffs "paid more for the Defective Vehicles . . . than they would have had the Seatbelt Defect been disclosed." SAC ¶ 58, 61. In other words, "Plaintiffs and the Class overpaid for their Defective Vehicles." *Id.* ¶ 61. As set out below, the Court concludes this theory, too, falls short.

To be sure, Sugasawara and Tumbarello may have been injured at the time of the purchase. "The Ninth Circuit has held that when a consumer alleges that he or she would not have purchased property, or would have paid less for it, had the seller not misrepresented the property or failed to disclose its limitations, the consumer has plausibly alleged an injury-in-fact." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 945 (N.D. Cal. 2018) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012); *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011)). As another court put it, "[a] vehicle with a defect is worth less than one without a defect. The overpayment for the defective, unsafe vehicle constitutes the economic-loss injury that is sufficient to confer standing." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011); *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("[P]laintiff suffered economic injury at the moment she purchased a DeVille because each DeVille was defective").

In this case, however, Plaintiffs have failed to adequately allege that the Defect remains after the recall remedy has been completed. If the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored. *Hadley v. Chrysler Group, LLC*, 624 F. App'x 374 (6th Cir. 2015), is instructive. There, Chrysler issued a recall for a defect in certain vehicles' airbag systems. *Id.* at 378. The plaintiffs alleged that their vehicles were worth less "based on the existence of the defective component from the moment of purchase." *Id.* The court determined the plaintiffs had failed to establish a redressable injury because "the repair . . . that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based." *Id.* Based on the SAC, the same is

11

true here. Thus, Plaintiffs have not articulated any plausible theory of economic loss.

In sum, without a concrete injury that is fairly traceable to Ford's alleged wrongdoing, the plaintiffs cannot sustain their claims. The Court therefore dismisses the SAC for lack of standing, pursuant to Rule 12(b)(1). However, because Plaintiffs could allege additional facts to establish standing, the Court grants Plaintiffs leave to amend. *See Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) (granting leave to amend where it was "not inconceivable that plaintiffs could have amended their complaint to establish standing through economic harm").

## IV. CONCLUSION

For the foregoing reasons, Ford's motion to dismiss the SAC for lack of subject matter jurisdiction is GRANTED with leave to amend. Should Plaintiffs elect to file an amended complaint, they shall do so within 30 days. If Plaintiffs fail to file an amended complaint within 30 days or fail to cure the deficiencies identified in this order, the claims dismissed in this order will be dismissed with prejudice. Plaintiffs may not add new causes of action or new parties without a stipulation or leave of the Court.

In addition, although the Court did not reach Ford's other arguments for dismissal, the Plaintiffs are advised that their amended complaint should remedy all the deficiencies identified in Ford's motion to dismiss. For example, the Court notes that Sugasawara purchased his vehicle in November 2016, but the SAC does not plausibly allege Ford was on notice of the Defect prior to that date. *See* SAC ¶¶ 49-57. If Sugasawara's overpayment injury predates any misrepresentation by Ford, then it cannot be fairly traceable to Ford for purposes of causation. Second, in order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must satisfy Federal Rule of Civil Procedure 9 with regard to claims that are grounded in fraud (such as Plaintiffs' claims under the CLRA and the UCL). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009). In particular, Plaintiffs must identify Ford's alleged misrepresentations and "set forth what is false or misleading" about them. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Third, Plaintiffs appear to assert that the Court has pendent personal jurisdiction over

12

Tumbarello's claims against Ford, Opposition at 23, but have failed to adequately respond to Ford's arguments to the contrary. Failure to cure the deficiencies identified in Ford's motion to dismiss will result in dismissal of the deficient claims with prejudice.

**IT IS SO ORDERED.**

Dated: August 21, 2019

_____
LUCY H. KOH
United States District Judge